Good morning, Tracy Dressner for Petitioner Ken Self. And if you can keep your voice up, please. Okay. Nobody has ever asked me that. I wanted to ask the Court if the Court would give a little leeway in terms of time, if necessary, in light of what appears to be a new issue regarding the applicability of Davis to this case. We'll make sure you get as much time as you need to make the argument. Thank you. I'm anticipating in light of Respondent's letter brief this week that he will be arguing that under Lockhart v. Fretwell, if there's a new rule, if you're a federal habeas petitioner and there's a new rule, and that rule will hurt the petitioner, that it applies retroactively. I confess I don't see much way around Lockhart. Okay. Good. I'll jump right in there. Okay. Well, I think there's two issues I wanted to say about, one the legal and one the procedural, which is that it seems to me that the sort of vagaries and randomness of time should make the difference in the outcome of a criminal case. And if you look at the timeline of this case, if I could have a minute to go over it, we have in January of 2002, the trial court rules that the calendar notes and the computer spreadsheets can come in under the state-of-mind hearsay exception. November 2003, the State Appellate Court says there is no state-of-mind hearsay exception. It doesn't qualify. And that arguably there's a confrontation clause violation, but it's harmless. In May of 2004, Crawford comes out. In June of 2004, Mr. Self's conviction is final. Right. So it's still on direct appeal when Crawford comes out. So it's still on direct appeal when Crawford comes out. Now, Crawford, of course, only addresses testimonial hearsay. And as I cited in my reply brief, almost every circuit that dealt with the issue post-Crawford has said that Davis wasn't, didn't actually flow from that, that post-Crawford, pre-Davis non-hearsay testimony was still governed by Roberts. Well, on the other hand, Davis tells us that it had been broadly hinted in Crawford. That may be the Supreme Court's way of saying, well, we're not departing, we're not making too much new law here, and we can have our own views as to what Crawford said. Davis says Crawford prefigured Davis. Actually, Davis doesn't say that so much as subsequently in, what's the case, Botkin case, says that. Yeah. But they say that a lot. And it sometimes is true and it sometimes is not. That's my point, and I hope it's not. Okay. In, if I can go on, in May of 2005, the district court denies the habeas petition. And it notes that Respondent never challenged the court of appeal finding of constitutional error, but it just assumed that it occurred and then found it harmless. In November of 2005, this Court grants a certificate of appealability on the issue of whether the State court's harmless error conclusion was reasonable. December 2005, Mr. Self files his opening brief, along with a request to expedite the appeal and waiving oral argument. February 2006, Respondent files his brief. There's just one paragraph in it saying that, simply noting that no court has ever definitively found a Federal constitutional violation. March of 2006, case is fully briefed. There's a calendar check performed. And then nothing happens for 17 months. During that intervening 17 months, Davis comes out. Seventeen months go by, and then in August of 2007, this Court appointed counsel and asks for the case to be supplementally briefed. That briefing goes on. The Respondent files their supplemental brief in January of 2008 and raises Davis as possibly a factor. Five days after that, this Court, en banc, issues Frans v. Henry, saying how cases in this posture should be decided. That is, a case where there's an assumption of constitutional error. The harmless error is the part that's problematic, but says you don't get relief just because you established that the harmless error analysis was objectively unreasonable. You also have to prove the antecedent constitutional violation. I argue that in my reply brief, argue that Davis doesn't apply retroactively. A couple of days ago, the Respondent notifies the Court that they're going to argue Lockhart v. Fredwell. Roberts, that's the sequence. So that's how we get here. And, of course, if things had happened differently, had the Court been cal – had the case been calendared as it looked like it was going to back then, all things might have been different, and that seems to me that's sort of the randomness of that. If Mr. Self had gotten relief under Roberts last year, two years ago, before Davis came out, we wouldn't be here today. But because of whatever reason, the Court is – nothing happens for 17 months. Things happen. His case gets buffeted by the winds of change, and now here we are having to litigate something that essentially has never been litigated. Yeah, although I'm sympathetic to the timing argument. I don't want you to mistake where I'm coming from. But Davis comes out in June of 2006. And as – I'm not checked, but I assume you've been a practitioner in front of us for a while in criminal cases, both direct appeal and habeas. We expedite the direct appeals. Habeas are treated in a less expedited fashion. I don't know that the delay in this case is one that really – even if there had been handled without the appointment of special counsel and so on, assuming he had been represented from the beginning, I doubt that it would have been heard before June of 2006. I agree. It may not have been heard, or it may have been heard, but probably would not have been decided, because the calendar – I think Davis has been likely to have been on the book, one way or the other. Of course, Lockhart is an old case. Okay. So let me take – let me explain why Lockhart doesn't apply. If you really read – Lockhart is an IAC case, an Ineffective Assistance Counsel case. And the Court's ultimate basis for finding that there wasn't prejudice from the attorney's failure to file the – to raise an objection was because it didn't render the underlying proceedings unreliable or fundamentally unfair. And in short, because of the intervening change in the law in Fretwell, the issue was can you use an aggravating factor at a death – at a sentencing that's also an element of the underlying felony. At the time Fretwell was tried, the Eighth Circuit had held that you could not use – you could not double-count that. And the counsel didn't object. Subsequently, while Federal habeas proceedings were ongoing regarding this Ineffective Assistance Counsel claim, the Eighth Circuit overturned its decision about the pecuniary gain or the aggravating factor. And – Let me cut to the chase, if I can, just because while I'm quite – we want to make sure you have time enough to make the argument. I don't – we don't want to be too excursive about it. I think there is a plausible argument, or at least I thought there was a plausible argument as I was working my way through Lockhart, because the retroactivity argument shows up in a funny way because it's Ineffective Assistance Counsel. And so what are the rules of which counsel should have been aware of at the time he tried the case rather than what shows up later? We're supposed to judge ineffectiveness at the time that the counsel acts. So I thought, well, you know, that's not the rule here. But then Justice Scalia writes at the very end of the opinion something that's much broader than just Ineffective Assistance of Counsel. He says, Federal habeas petition has no interest in the finality of state court judgment under which he's incarcerated, nor does petitioner ordinarily have a claim or reliance on past judicial precedent as a basis for his action that correspond to the state's interest described in Butler. The result from these differences is the state will benefit from our Teague decision in some federal habeas while the habeas petitioner will not. That's a pretty broad statement that says this is a one-way ratchet. Defendants in habeas cases, if the rule gets better, they can't take advantage of it. If the rule gets worse, they suffer. I mean, I read Scalia saying that very clearly. I may or may not agree with it, but I don't get to choose. One, I take that that actually, that wasn't central or crucial to the Court's ultimate decision in Fretwell, because the at the court, the point was that if Fretwell, if there had been a reversal and Fretwell was retried, under the United States Supreme Court law having to do with aggravating factors, that same evidence would come in, so that you can't say that there was an underlying unfair trial or underlying unreliable trial. In Mr. Self's case, all Davis does is say, is say that we're taking the non-testimonial hearsay out of the confrontation realm. It's not doing away with all hearsay law. We already have a ruling from the State court that this hearsay did not apply, did not fall into any hearsay exceptions. So in this case, putting aside for the minute, for a moment, the Federal constitutional angle, if Mr. Self had a new trial, Davis would not, would not mean that this hearsay comes in. Under State law, under State law, which the court of appeal has already spoken of, that evidence still should not come in. Well, but that's all very good, but we're not going to decide that. Well, but I think this Court can. I think this Court can. Why on earth? Because the essence of Fretwell, first, the ruling about the retroactivity in Fretwell, I don't think is a, is a, is a, is the clear key ruling and is arguably dicta in Fretwell. And the Court hasn't spoken, the United States Supreme Court hasn't spoken to, to that point since then. We, we, as you probably know, we ignore Supreme Court dicta at our peril. And, and I appreciate that you do. The, but be that as it may, I don't think we have a firm ruling of that. And if you actually look at what drove the concerns in Fretwell, it was that ultimately it wouldn't have made a difference and that Fretwell's trial wouldn't have been any different. That's not the situation in Mr. Self's case. Now, you're, you're already running over the, the ten minutes, and there's another topic I do want to get to, and you may also, and that's the IAC claim here. Has that claim been exhausted? Yes. And I, I believe I addressed that in, in this, I assume you're talking about the IAC claim regarding the, just having to do with the timeline. Yes. And I don't have my page set right here, but I do address it in my brief, and it's, it's within the four corners of the petition for review, that issue. My, and I can give you the site when I come back up. The, my, my issue regarding that issue is that that issue cannot be parsed as thinly as it appears, at least as Respondent is looking at it. I don't see how this Court could consider whether counsel was ineffective in allowing the timeline to go in without looking at all the stuff that happened before that, which is the attorney-client, the, the prosecute, the police procuring of the attorney- client privileged material pre-trial, finding out that it was privileged, not returning it, and then subsequently using that to build their case against Mr. Self. And there's just no way to, to divorce the aspect of how the timeline eventually came into the trial from how that timeline ever got into the, into the prosecution's eyes in the first place. And I, and for that reason, I've argued that the, that the Respondent has too narrowly construed the Certificate of Appealability. I read it differently. This Court has said in, in previous cases that courts, that Certificates of Appealability should be read more liberally. And I would ask the Court to do that in this case. And if for some reason the Court does view it in that narrow sense, that it expands the Certificate of Appealability to include the background information having to do with the- So just to make sure I got a handle on your argument as to why this timeline is IAC. It's not merely the response at the time of trial where the defense lawyer says, listen, if you're going to let it in, I want the whole thing in. And that's a strategic decision to say, okay, given that he has it, I'll let the whole thing in. You're saying, well, but we're not just talking about the strategic decision as to whether we're going to let it come in as evidence. We're talking about the strategic decision or nonstrategic decision of failure to raise at the very beginning that it was taken in violation of attorney-client. Absolutely. Absolutely. And I actually believe that the strongest component of that argument is that there was a very valid government abuse of the attorney-client privilege. It may have started out inadvertently, but once the police learned that it was privileged, they had every obligation to return that, and they did not. And that had counsel pursued that tactic. And that IAC argument would be independent of whether or not there was a violation of the federal constitution, because there's some possibility that this doesn't violate the federal constitution because it was seized pre-indictment. But this is IAC, which is to say, you had a legally valid claim under federal or state law, and you failed to assert it. Right. Absolutely. Okay. Why don't we hear from the other side, and then we'll make sure to give you a chance to respond. Thank you. May it please the Court, Daniel Rogers for responding. First of all, Your Honors, with respect to Lockhart, again, Justice Scalia, in Lockhart, there's no indication that Lockhart was limited to its facts or that the particular nature of the claim being IAC dictated the result in Lockhart. Regardless of the claim, an IAC claim of this nature, applying the rule that Your Honor read from the last paragraph of Lockhart, would result in the decision that the Court actually produced in that case. And are you suggesting that Justice Scalia engaged in judicial activism, deciding something that was not in the case immediately before him? I'm not suggesting that, Your Honor. What I'm suggesting is that Justice Scalia stated a rule in this case that More broadly than the facts of the case in front of him demanded. Perhaps more broadly, but I don't believe that there is any limitation on the Court stating a rule in necessarily broad terms. It, the rule, it was quite obvious based on the interests that are present in Teague, the State has in finality of judgment, and those have been addressed in Teague. They're addressed again in Bochting, that those interests are not present. And I'm not sure that it would make sense for Justice Scalia to have limited the rule to IAC claims. And he did not in that case. And that is, that is the precedent that this Court has. And again, under Lockhart, Justice Scalia addressed the equity issue. He acknowledged as the dissent in that case raised that there could be a perception that the result would be unfair to defendants. And the Court was not concerned with that. Are you sure you meant to say that? First sentence, he acknowledged the possible unfairness, and second sentence, he was not concerned? He acknowledged a perception of unfairness. And forgive me if I'm less articulate than Justice Scalia. He acknowledged the perception of unfairness. And that was raised in the dissent. And he indicated that that did not, that perception did not vitiate the rule being announced. And I'm not sure I'm still presenting that as eloquently as I would like. No, don't let me tease you. I'm sorry. But, Your Honor, again, in this case, were this Court to adopt Mr. Self's position, Mr. Self would in essence be achieving a windfall in that this, he would be receiving relief for a constitutional violation that the United States Supreme Court in Davis has indicated was not, does not vindicate a right that he in fact possesses. Yes. Or you could say it a different way. He would be receiving relief for a constitutional violation at the time that it occurred was a violation. Arguably. Yes. Now, it's, it's, again, Ohio v. Roberts, and I, there is some analysis of Ohio v. Roberts in the panel's reply briefing. But, again, in this case, the California State Court proceeded immediately to harmless error review under Chapman. I don't, while I certainly believe that Davis and with Lockhart applying Davis to the to this case, that Davis indicates that no such error occurred, I don't want to stray from the fact that the State Court's harmless error determination in this case was also reasonable. So. Speaking only for myself, I think the State is dead wrong on that. But I'm speaking only for myself. That is to say, this material was absolutely critical to linking up a huge number of facts that otherwise were just going to sit out there and isolated with a huge amount of assumption necessary to bring them into the story. Now, I don't, I don't speak for my colleagues. I don't know what they think on that. But I have to say that I thought if, if we get to harmless error, I think the Court of Appeal got it wrong. Well, yeah, first of all, I don't believe we will get to harmless error because of Davis and Lockhart. Secondly, on that point, I would respectfully disagree with Your Honor that certainly I, I can't say that the prosecution didn't use that evidence. In the second supplemental excerpts, you have the prosecution's closing argument before you. There was reference made to it. However, what one should consider is that while it perhaps created a situation that was easier for the prosecution to use it to present, certainly the prosecution could have presented that information in other ways. At second supplemental excerpts five to six, the prosecutor specifically notes that Jerry Fox, the DA expert, came up with the same numbers by looking at the checks, et cetera. Jerry Fox's testimony on that point is at supplemental excerpts 367, 369 to 70, and 374 to 75, that the prosecution didn't simply use that spreadsheet and the day planner entries in isolation. The prosecution corroborated them. The prosecution specifically went to lengths, to the length of putting on Mr. Fox to present that evidence. The evidence was certainly before the jury, and I think it's speculative to say that the prosecution couldn't have taken evidence that was before the jury in this case and in the course of argument tied it together without the day planner and the spreadsheet. I think the evidence was there. This was a skillful prosecutor. I think this individual could have argued that information to the jury in that fashion. Could I ask you before your time runs entirely on you to address the IAC claim with respect to the timeline and with respect to exhaustion? Certainly, Your Honor. With respect to exhaustion and then on the merits of the timeline. I should have said that, right? Certainly. What I would say regarding exhaustion, if I may, is that the claim arose in the state habeas petition that was filed by petitioner and decided concurrently by the state court of appeal. Then in the petition for review, counsel who prepared the petition for review included a point heading on the IAC claim and indicated that because of space limitations, the entire claim with facts supporting an explanation of prejudice, et cetera, could not be presented. Again, petitioner was represented by counsel in that matter. He never attempted to receive leave of the California Supreme Court to present the argument in full. And I don't think a point heading fairly presents the question to the state court. So that's the argument that we have on exhaustion. And this was on direct? This was on petition for review in the California Supreme Court. This was on state habeas review, right? It was. Petitioner initially raised this in a state habeas petition that was filed in the California court of appeal and decided concurrently with the direct appeal. Then appellate counsel, in preparing a petition for review, added those state habeas petition claims that had been before the California court of appeal sort of as an afterthought to the petition for review. And the petition for review is in the supplemental excerpts. So if the Court would refer back to that, it is pretty clear in the excerpts how that was handled. But there was no, to my knowledge, there was no separate state habeas petition filed in the California Supreme Court, only in the California court of appeal. And I have a minute remaining, so if I may move to the merits on the IAC claim. Assume for purposes of argument that it's exhausted. Okay. If assuming for purposes of argument that the IAC claim is exhausted, first of all, I think Petitioner totally ignores the tactical dimension of this decision. Now, Petitioner tries to sort of parse out two separate incidents of ineffectiveness here, the initial that counsel should have done something when the timeline was initially seized, and then later on when counsel agreed to the admission of the timeline at trial, and in fact used the timeline as part of her argument. This enabled Petitioner to essentially, in a manner of speaking, testify as to his activities, as to his alibi, without subjecting himself to the rigors of cross-examination. And in that sense, you know, it's always difficult in these IAC cases, and may I have a few seconds to continue my answer? It's always difficult in these IAC cases because obviously we're at a point where whatever tactic was utilized didn't work. The defendant was convicted. But was this unreasonable? Does it matter even that counsel didn't do something earlier? At the time before this document had been admitted before the Court, counsel did address it and specifically wanted the whole thing in. It was of value to counsel's case, to the defense case. What about the argument that having had it early, not the question of admissibility at trial, but having had it early and, for purposes of my question, illegally, that is to say in violation of the attorney-client privilege, that the State was assisted in its investigatory activities? I don't think that the record bears that assertion out, Your Honor. First of all, the defense all along was alibi. And it was going to have to come out at some point. And as either the State appellate court or the magistrate judge in this case, and Mr. Self of the element of surprise. But it certainly, I don't see that there's anything in the record to indicate that the prosecution was able to go out and get additional witnesses that it wouldn't have otherwise had an opportunity to get because it was tipped off that this alibi defense was coming or anything like that. It did use the item at trial. But again, counsel specifically knew that was the risk. It was going to be there for both of them to use. But I don't know that it was used specifically to assist in the investigation of the case or that it allowed the prosecution to present evidence other than the timeline itself that they wouldn't have had otherwise. And unless the Court has any further questions. Further questions from the bench? Okay, thank you. Thank you. Why don't we give you two minutes? Okay. One minute on the IAC issue. The timeline wasn't necessary because Mr. Self presented 11 alibi witnesses who basically testified to the whole time sequence. So that was not at all a necessary component. To the extent there's any factual dispute as to what the prosecution did with the illegally obtained timeline, that's an issue for an evidentiary hearing. And I would suggest that the remedy is that the case be remanded to the district court for an evidentiary hearing on the issue of IAC. If it came through the 11 witnesses, what was the prejudice of the timeline then? Because there were some other entries that were on the timeline that were inconsistent with that, and they were pointed out and highlighted by the prosecutor. The exhaustion issue is discussed on page 18 of my reply brief for a site wherein the petition for review, if you add, look at several different components, it was exhausted. And I, because of time, I just asked the Court to look at page 18. I want to discuss the Fretwell issue one more time. First, with, in fairness to Judge Scalia, it's actually Chief Judge Rehnquist who wrote Fretwell. And he ended the case with a Latin phrase, which I looked up. And the Latin phrase says, essentially, once the reason for a law has ceased to exist, then the law itself ceases to exist. And that is why this case is different than Fretwell. Hearsay hasn't gone away. It's only gone away in a Federal, in a Federal context. Had the, had the constitutional underpinning of confrontation not changed, then Mr. Self would have been here arguing that the State law error in allowing that hearsay exception that didn't apply to come in rendered his trial so fundamentally unfair that he, that relief is justified. And the only thing that has changed is the vehicle that got Mr. Self into Federal court. The underlying issue, the fact that this evidence came in and it should not have come in under State law and, and should not have come in under Federal constitutional law that existed at that time hasn't changed. And that's why Fretwell versus, versus Lockhart versus Fretwell is different. This is a case where there is complete fundamental unfairness. This isn't a case where the law ceased to exist, as it did in Fretwell. And because of the importance of this issue to this case and actually to other cases, I would respectfully ask that, because this came in at the last minute, that the Court consider asking for or seeking additional briefing on the issue of how Fretwell applies to this case. Thank you. Roberts. We will consider that request for additional briefing on Fretwell. And it is true that it's come in late. No, no, no, I attribute no fault to either side that it came in late. And until you hear from us with an order to brief, don't, don't do so. But we may, we will certainly consider the request. Thank you. Thank both sides for their helpful argument in this case. And you're quite right to correct me. Scalia wrote, Justice Scalia wrote Davis, but Justice Rehnquist wrote the other thing. Okay. The case itself versus Rimmer is now submitted for decision.
judges: Noonan, Fletcher, Gould